██ In the Matter of RODNEY JONES et al., Appellants, v ZONING BOARD OF APPEALS OF THE TOWN OF ONEONTA et al., Respondents. [934 NYS2d 599]—

Peters, J.P. 

Larry Place and his wife owned a 19-acre parcel of property in the Town of Oneonta, Otsego County. The property, located in a RA-40 zone wherein the permitted uses are primary residential and agricultural, contains a sand and gravel mine that has remained inactive for approximately 50 years. In 2007, Place applied for a use variance to permit mining on the property. After a hearing, respondent Zoning Board of Appeals of the Town of Oneonta (hereinafter ZBA) granted the variance. Petitioners, whose property adjoins the parcel in question, commenced a CPLR article 78 proceeding to challenge the ZBA's determination. Supreme Court dismissed the petition. On appeal, this

Court annulled the determination after concluding that proper notice of the hearing was not provided to petitioners or the general public (*Matter of Jones v Zoning Bd. of Appeals of Town of Oneonta*, 61 AD3d 1299 [2009]).

During the pendency of that appeal, respondent Clark Stone Products purchased the property for $125,000, which included the value of the minerals contained therein. Pursuant to the contract, Clark was required to reconvey the approximately one-acre parcel where the Place residence was situated back to the Places upon approval by the Town for a subdivision. After this Court annulled the ZBA's determination granting Place's application for a variance, Clark reapplied for a use variance. Following a hearing, the ZBA approved Clark's application and granted the variance.* Petitioners then commenced this proceeding to annul the ZBA's determination, asserting that Clark failed to establish an unnecessary hardship warranting a use variance. Supreme Court dismissed the petition and petitioners now appeal.

Zoning boards are afforded considerable discretion in considering applications for variances and their determinations will not be disturbed if they have a rational basis and are supported by substantial evidence in the record (*see Matter of Ifrah v Utschig*, 98 NY2d 304, 308 [2002]; *Matter of Androme Leather Corp. v City of Gloversville*, 1 AD3d 654, 656 [2003], *lv denied* 1 NY3d 507 [2004]). An applicant for a use variance bears the burden of demonstrating that restrictions on the property have caused an unnecessary hardship, which requires a showing that (1) the property cannot yield a reasonable return if used for permitted purposes as it is currently zoned, (2) the hardship results from the unique characteristics of the property, (3) the proposed use will not alter the essential character of the neighborhood, and (4) the hardship has not been self-imposed (*see* Town Law § 267-b [2] [b]; *Matter of Sullivan v City of Albany Bd. of Zoning Appeals*, 20 AD3d 665, 666 [2005], *lv denied* 6 NY3d 701 [2005]; *Matter of Center Sq. Assn., Inc. v City of Albany Bd. of Zoning Appeals*, 19 AD3d 968, 970 [2005]; *Matter of Save the Pine Bush v Zoning Bd. of Appeals of Town of Guilderland*, 220 AD2d 90, 95 [1996], *lv denied* 88 NY2d 815 [1996]).

As to the first element, Clark was required to present "dollars and cents" proof establishing that the land cannot yield a reasonable return if used solely for a purpose permitted in the zone (*see Matter of Village Bd. of Vil. of Fayetteville v Jarrold*,

---

* While the ZBA took notice of Place's prior application, it required Clark to establish de novo that it met the criteria for a use variance.

53 NY2d 254, 257 [1981]; *Matter of Supkis v Town of Sand Lake Zoning Bd. of Appeals*, 227 AD2d 779, 780 [1996]; *Matter of Drake v Zoning Bd. of Appeals of Vil. of Colonie*, 183 AD2d 1031, 1032 [1992]). In that regard, Clark proffered a reasonable rate of return evaluation prepared by Bray Engineering and updated by a real estate appraiser's analysis of the current market conditions. According to these submissions, the market value of the parcel, if subdivided and sold for residential purposes, was $16,000 (or $1,000 per acre), which is significantly less than Clark's total investment in the property of $125,000. This assessment was based upon, among other things, an examination of the market in the general area, the topography of the property, its prior mining history, existing wetlands and archaeologically sensitive areas, and set back and minimum lot size requirements contained within the Town's land use regulations. Moreover, Bray indicated that the property's existing soil conditions are not suited for conventional septic tank absorption, and that poor filtering and contamination of the water supply are possible during periods of flooding. With respect to agricultural use, evidence was presented that prior use of the property for this purpose yielded less than $700 per year and that the quality of the soil is not conducive to higher value crops. Bray's report further concluded that the remainder of the property, which consists of steep slopes, brush or is covered by existing stone piles, has no allowable usage for any other purpose authorized in the zoning district. Clark also submitted the report of Gary Stewart, a licensed real estate broker, who detailed the work that would be necessary to prepare the property for residential or agricultural use, including reclamation of at least half of the acreage.

In light of this evidence, we cannot say that the ZBA's conclusion that Clark satisfied its burden of showing the absence of a reasonable return lacks a rational basis. While petitioners argue that the evidence proffered by Clark is not credible and is completely "one-sided," issues of credibility are within the sole province of the ZBA to resolve (*see Matter of Supkis v Town of Sand Lake Zoning Bd. of Appeals*, 227 AD2d at 781). Furthermore, it was not unreasonable for the ZBA to accept Clark's economic analysis over the contrary information provided by petitioners which, for the most part, consisted of bare conclusory assertions as to the viability of yielding a reasonable return from the property (*see Matter of Center Sq. Assn. v City of Albany Bd. of Zoning Appeals*, 19 AD3d at 971; *see generally Matter of Village Bd. of Vil. of Fayetteville v Jarrold*, 53 NY2d at 259).

Substantial evidence also supports the Board's finding that

the hardship results from "unique conditions peculiar to and inherent in the property as compared to other properties in the zoning district" (*Matter of First Natl. Bank of Downsville v City of Albany Bd. of Zoning Appeals*, 216 AD2d 680, 682 [1995]; *see Matter of Supkis v Town of Sand Lake Zoning Bd. of Appeals*, 227 AD2d at 781). Notwithstanding petitioners' assertion that their property "has the exact same steep slopes, uneven terrain, wetlands, creek and gravel/soil composition," the ZBA rationally concluded that the nearly three-acre gravel and sand mine, a portion of which is already exposed due to prior mining activity, constitutes a unique characteristic of the property that significantly contributed to the hardship (*see Matter of Douglaston Civic Assn. v Klein*, 51 NY2d 963, 965 [1980]; *Guadagnolo v Town of Mamaroneck Bd. of Appeals*, 52 AD2d 902, 902 [1976], *appeal dismissed* 40 NY2d 845 [1976]).

We also find sufficient evidence in the record to support the ZBA's conclusion that the use variance would not alter the essential character of the neighborhood. The property is not situated in a conventional neighborhood, and the closest residence is located approximately 700 feet from the property line. The evidence submitted by Clark, including the negative declaration issued by the Department of Environmental Conservation (hereinafter DEC) in connection with the mining permit, established that the mining operations will generally be below the line of sight from State Route 205, will not be visible from any nearby residence, will not have a significant impact on traffic in the area, and will be restricted to mitigate against extensive noise. Indeed, DEC's negative declaration concluded that "[d]ue to the small scale of this project and mitigative measures proposed by [Clark], the project as proposed is not expected to have a[ ] significant impact to these residences [and n]o single large impact to the local community has been identified." Notably, the ZBA imposed 17 conditions upon the use variance, in addition to conditions set forth in the mining permit issued by DEC, to ensure that the essential character of the neighborhood would not be altered.

As to the final element, "[a] hardship is considered self-imposed if the variance applicant purchased the property subject to the restrictions and was aware of the zoning restrictions at the time that it purchased the property" (*Matter of Ctr. Square Assn. v Bd. of Zoning Appeals*, 19 AD3d at 971). At the time Clark purchased the property, Place had a valid use variance to operate the sand and gravel mine which, absent a specific time limitation, runs with the land until revoked (*see Matter of St. Onge v Donovan*, 71 NY2d 507, 520 [1988]; *Matter of Conte v*

*Town of Norfolk Zoning Bd. of Appeals*, 261 AD2d 734, 736 [1999]). Although the transaction occurred while an appeal of the ZBA's issuance of that variance was pending, the ZBA could rationally conclude that this fact alone did not render the hardship self-imposed (*see Matter of Clute v Town of Wilton Zoning Bd. of Appeals*, 197 AD2d 265, 268-269 [1994]). Petitioners' remaining contentions, to the extent not specifically addressed herein, have been considered and found to be without merit.

Lahtinen, Stein, McCarthy and Garry, JJ., concur. Ordered that the judgment is affirmed, without costs.